UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

ALBERT AKINS, JR.          ]
                           ]
v.                         ]      No. 1-03-0110
                           ]      Judge Higgins
CONTINENTAL CASUALTY COMPANY, ]
et al.[1]                  ]

M E M O R A N D U M

The Court has before it the plaintiff's memorandum (filed March 18, 2004; Docket Entry No. 11) in support of his claim for long term disability benefits and the defendant's motion (filed April 19, 2004; Docket Entry No. 13) for judgment on the administrative record and memorandum (Docket Entry No. 14) in support.

The Court has subject matter jurisdiction over the plaintiff's claim under the Employee Retirement Income Security Act pursuant to 29 U.S.C. § 1132(e).

For the reasons set forth below, the Court shall affirm the findings of the administrator.

I.

The plaintiff, Albert Akins, Jr., was an employee of Rhodia, Inc. from June 7, 1971, to August 31, 2002. He was employed as a

---

[1]The parties stipulated, (filed March 18, 2004; Docket Entry No. 12), that CCC is the appropriate party defendant and is responsible for plan benefits and that CNA Group Life Assurance Company should be dismissed from this action without prejudice.

maintenance mechanic, whose job function was described as "maintenance and repair of material handling equipment[,] pumps, conveyors [and] piping." (AR 032). The job of maintenance mechanic requires an individual to work eight hours a day, five days a week and 10%-20% overtime. During an eight hour work day, a maintenance mechanic is expected to stand for a total of six hours, walk for one hour and sit for one hour. Id. The job requires the ability to push/pull 50 pounds, use a wrench in a standing/squatting position while applying 20-40 pounds of force for one hour in the work day and lifting/carrying equipment typically weighing 20-30 pounds to a maximum of 50 pounds. (AR 032-33). As a maintenance mechanic, the plaintiff was also required to perform the following tasks up to one-third of the day: climbing, one hand control, two hand control, left hand grasping and turning, finger dexterity, reaching above and below the shoulders, reaching across, reaching to the floor, twisting of the head and back, upper extremity range of motion, bending at the waist and operating a motor vehicle. (AR 033). He was required to perform the following tasks up to two-thirds of the day: stooping, kneeling, crouching, right hand grasping and turning, and whole body range of motion. Id.

In April 1998, the plaintiff suffered an injury to his left quadriceps tendon when a pump weighing 150 pounds fell on his leg. Three days later following this injury the plaintiff's left leg

2

faltered, and he fell on concrete, injuring his right quadriceps tendon. (AR 099, 086). He had surgery on both legs.

On August 18, 1998, Dr. H. James Wiesman, Jr., the plaintiff's orthopedic surgeon, opined that the plaintiff could return to work to perform light duty. (AR 082). Dr. Wiesman noted that the plaintiff's job required a physical demand level of heavy but that he had only demonstrated a demand level of medium. He also noted that the plaintiff's supervisor was allowing him to return on a light duty basis and that he would have a flexible schedule, which would include sitting, standing and resting as needed. Id. On October 20, 1998, Dr. Wiesman stated that he believed that the plaintiff had reached maximum medical improvement and that the plaintiff was working in the right type of job, i.e., "working with computers." Id. On November 23, 1998, he stated that the plaintiff's temporary restrictions were no kneeling, crawling, squatting or working at unprotected heights. (AR 084).

From April 1998 to August 31, 2002, the plaintiff was assigned to various duties and tasks in the storeroom at Rhodia in an attempt to help him cope with his physical ailments. (AR 042, 039, 055, 097). The plaintiff's job working in the storeroom was self-paced and required him to work 40 hours a week. (AR 061). At any one time, the plaintiff was expected to stand for one-half hour, walk for one-half hour, and sit for two hours. In a typical work day, the plaintiff was expected to stand for a total of two hours,

3

walk for a total of two hours and sit for a total of two hours. The position in the storeroom did not require any dynamic or static pushing or pulling. Id. He occasionally placed stock items, typically weighing one pound and up to a maximum of five pounds, on the shelf. (AR 062). The only other physical demands of his job were handling with one hand control, grasping with the right hand, finger dexterity and reaching across, all of which occurred up to one-third of the time. Id. The plaintiff also described his job as not involving walking or use of steps, was sedentary only and that he answered the telephone and signed for parts. (AR 100).

The plaintiff stopped working for Rhodia on August 31, 2002, thus, establishing his date of loss as occurring on September 1, 2002. (AR 026, 035, 039). As an employee of Rhodia, the plaintiff was covered by its group long term disability plan. CNA Group Life Assurance Company provided the services while the plan was underwritten by Continental Casualty Company. The plan provides that a participant must satisfy the 180 day elimination period in order to be eligible to receive long term disability benefits. (AR 005, 011). The elimination period begins on the day the participant becomes disabled. (AR 011). "It is a period of continuous *Disability* which must be satisfied before [the participant] [is] eligible to receive benefits from [the plan administrator]. [The participant] must be continuously *Disabled*

4

through [his] elimination period." Id. "Disability" is defined as follows:

> "*Disability*" means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1. continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.
>
> After the *Monthly Benefit* has been payable for 24 months, "*Disability*" means that *Injury or Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1. continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

(AR 010-11).

The plan defines "material and substantial duties" as "the necessary functions of *Your Regular Occupation* which cannot be reasonably omitted or altered." (AR 021). "Regular occupation" is defined as "the occupation that *You* are performing for income or wages on *Your Date of Disability*. It is not limited to the specific position *You* held with *Your* employer." Id. In order to show proof of disability, a participant must supply, among other things, the following:

> 4. Objective medical findings which support *Your Disability*. Objective medical findings include but are not limited to tests, procedures, or clinical

5

examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s).

5. The extent of *Your Disability*, including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation*.

(AR 017).

On September 5, 2002, Dr. Charles A. Ball, the plaintiff's primary care physician, noted that the plaintiff remained severely restricted from work activity and could "only perform absolute sitting sedentary activities." (AR 090). He noted that the plaintiff had decreased muscle size of both lower extremities, marked weakness and poor exercise tolerance to the lower extremities. He further noted the following: "Date first unable to work?: 9/01/02. Condition arising out of patient's employment?: Yes. Patient's status?: Unchanged. Prognosis?: Patient has reached maximum recovery. Suspect to return to work date?: No return to work. Restrictions?: Unable to perform any ambulatory activity." Id. Dr. Ball saw the plaintiff again on October 3, 2002, and concluded that he was unable to return to work. (AR 089).

On December 5, 2002, the plaintiff filed a claim for long term disability benefits, asserting as the reason "Heart failure & respiratory Illness/Both Legs." (AR 030). In the Physician's Statement completed on December 3, 2002, Dr. Ball diagnosed the plaintiff as suffering from leg dystrophy and coronary artery disease. (AR 028). Under "Complications" Dr. Ball noted poor

6

exercise tolerance to lower extremities and heart failure. <u>Id</u>. With regard to physical limitations, he stated that the plaintiff was unable to perform any ambulatory activity and had lower extremity weakness. (AR 029). Dr. Ball's prognosis was that the plaintiff had reached maximum recovery and that he would be unable to return to work. <u>Id</u>.

On December 26, 2002, the plaintiff's request for long term disability benefits was denied. (AR 039). The plaintiff was deemed to have worked as a storeroom clerk from April 1998 through August 31, 2002. CNA explained that "the material and substantial duties of a storeroom clerk requires sedentary work for 8 hours a day, answering phones and signing for parts." Because the plaintiff's current level of functioning was determined to be greater than or equal to the physical demands of a storeroom clerk, CNA found that the plaintiff was not disabled. <u>Id</u>.

In a letter dated January 28, 2003, Michael Phelan, Regional Human Resources Manager for Rhodia, stated that he was appealing on behalf of the plaintiff. (AR 041). In his appeal, Mr. Phelan objected to the plaintiff's job classification of storeroom clerk. Mr. Phelan explained that the Nashville plant where the plaintiff worked was unionized and that the positions and responsibilities were negotiated between the union and the plant. He stated that the position of storeroom clerk did not exist and had, in fact, never existed. <u>Id</u>. He submitted documentation which classified

7

the plaintiff as a maintenance mechanic "A". (AR 041, 044-46). Mr. Phelan explained:

> [M]anagement makes work assignments to its maintenance mechanics every day based on work to be done and resources available. With recent budgetary constraints, the management . . . determined that it could no longer afford to assign Mr. Akins tasks in the Storeroom, rather he would be needed to work on mechanical tasks more directly associated with maintaining our production equipment.

(AR 042).

As a result of management's decision to assign him to tasks outside of the storeroom, the plaintiff underwent a physical examination. (AR 042). Mr. Phelan stated that they were advised by the examining doctor that the plaintiff would be unable to perform the typical duties associated with the position of maintenance mechanic "A". In summary Mr. Phelan stated that management reserved the right to assign maintenance mechanics any job that management saw fit but that those assignments did not alter the job classification of the maintenance mechanics. Id.

On February 5, 2003, CNA denied the appeal filed on the plaintiff's behalf, reiterating that the plaintiff had been performing the job duties of storeroom clerk despite his classification as a maintenance mechanic "A". (AR 047). CNA explained that the fact that Rhodia was no longer able to accommodate the job duties that the plaintiff had been performing for over four years was an employment issue instead of a disability issue. Id. Based on the extended time in the storeroom, CNA

8

reasoned that the plaintiff was not expected to perform in the capacity of a maintenance mechanic. (AR 048). The plaintiff was also advised that a request for an appeal of a denial must come from the plaintiff himself in writing. Id.

By letter dated March 13, 2003, the plaintiff requested a reconsideration of the denial of his request for long term disability benefits. (AR 050). His request was denied on March 19, 2003, and his file was referred to a formal appeal review. (AR 051-52). On May 2, 2003, the appeals committee upheld the denial of disability benefits. (AR 055). While it agreed that based on the record the plaintiff would not be able to perform in the general workforce as a maintenance mechanic, the committee found that the record did not indicate that the plaintiff's functional capacity was less than that required to perform the job of storeroom clerk, which it concluded was the plaintiff's "regular occupation." Id. A second appellate review was later conducted, and on July 30, 2003, the appeals committee informed the plaintiff that his appeal request was once again denied. (AR 078). The plaintiff filed the instant action on October 8, 2003. See complaint (Docket Entry No. 1).

## II.

Because of the differing standards of review, the threshold issue in an ERISA action involving denial of benefits is whether the plan administrator was given discretion under the plan to

9

determine eligibility for disability benefits or to construe the terms of the plan. Miller v. Metro. Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991). Absent plan language that grants the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the appropriate standard for reviewing a fiduciary's denial of ERISA benefits is the de novo standard. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80, 95 (1989). Likewise, "factual determinations of plan administrators in actions brought under 29 U.S.C. § 1132(a)(1)(B) are subject to de novo review" unless the plan "explicitly vest[s] fact-finding discretion in the plan administrator." Rowan v. UNUM Life Ins. Co. of Am., 119 F.3d 433, 435-36 (6th Cir. 1997).

Under such circumstances, a federal court's role in reviewing a decision to deny benefits within the ERISA context is "to determine whether the administrator or fiduciary made a correct decision." Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990). In its de novo review, the district court pays no deference to the fiduciary's determination of benefits nor presumes that the fiduciary's decision was correct. Id. Instead, the court makes a determination of whether the employee was entitled to benefits under the plan. Id.

If the benefit plan under consideration expressly provides the fiduciary or administrator with "discretionary authority to

10

determine eligibility for benefits or to construe the term of the plan," application of the highly deferential arbitrary and capricious standard of review is appropriate. Firestone, 489 U.S. at 115, 109 S.Ct. at 956-57, 103 L.Ed.2d at 95; Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996). Likewise, in order for the arbitrary and capricious standard to apply to factual determinations, there must be an explicit grant of authority to the administrator or fiduciary to make such determinations. Rowan, 119 F.3d at 436.

In reviewing an administrator's decision under these circumstances, the Court must determine "whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988), cert. denied, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988). If the decision of the administrator or fiduciary is "rational in light of the plan's provisions," the decision must be upheld. Id. In addition, if a fiduciary or administrator is operating under a conflict of interest when making benefit determinations, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115, 109 S.Ct. at 957, 103 L.Ed.2d at 95.

The plan specifically provides, "When making a benefit determination under the policy, *We*[2] have discretionary authority to

---

[2] "*We*" refers to Continental Casualty Company. (AR 021).

11

determine *Your* eligibility for benefits and to interpret the terms and provisions of the policy." (AR 009). Both parties agree that the plan grants the administrator discretionary authority. Accordingly, the Court shall apply the arbitrary and capricious standard in reviewing the administrator's findings.

III.

A. REGULAR OCCUPATION

The plaintiff contends that Continental erred in determining that his regular occupation was that of a storeroom clerk. He asserts that no such position existed at Rhodia and contends that his regular occupation was in fact that of a maintenance mechanic. The defendant, however, contends that the plan, by its own terms, defines a participant's regular occupation to be the occupation that he is performing for wages on the date of his disability. The defendant contends that the regular occupation is not limited to the specific position or class of position by which the participant was classified but instead is the actual job that the participant was working and earning wages at the time he became disabled.

The record reflects that the plaintiff stopped performing the duties typically required of a maintenance mechanic after April 1998. Instead the plaintiff performed the duties normally associated with being a storeroom clerk. In fact the plaintiff himself described his job as sedentary and that his job consisted of him answering the telephone and signing for parts. While the

12

position of storeroom clerk may not have existed and the plaintiff remained classified as a maintenance mechanic "A", the reality of the situation is that the plaintiff was performing the duties of a storeroom clerk. Although Mr. Phelan stated that management assigned work to its maintenance mechanics on a daily basis based on work that needed to be done and that such work did not alter the classification of the maintenance mechanics, the fact remains that for over four years the plaintiff continuously performed the duties of a storeroom clerk.

The plaintiff argues that the defendant ignores its own definition of "regular occupation" by interpreting it to mean the specific position, i.e., his assignment to the storeroom, that the plaintiff was holding at the time of his disability. The plan defines "regular occupation" as "the occupation that *You* are performing for income or wages on *Your Date of Disability*. It is not limited to the specific position *You* held with *Your* employer." (AR 021). He therefore argues that the defendant incorrectly classifies the plaintiff's position as storeroom clerk based on the specific place in the plant that he was working.

The defendant disputes that it interpreted the plan language to mean that the plaintiff's regular occupation was the specific position that he held on the date of his disability and therefore improperly concluded that he qualified as a storeroom clerk. The defendant asserts that the plaintiff's "specific position" was

13

maintenance mechanic. However, it contends that the plaintiff's regular occupation for determining disability is not limited to this position or job classification. Instead under the plain terms of the plan, the plaintiff's regular occupation was storeroom clerk or, in other words, the occupation that he was performing for wages on the date of loss.

The plain language of the plan states that the participant's occupation is not limited by the specific position he held with his employer. Although the plaintiff was classified as a maintenance mechanic, he continuously performed the work of a storeroom clerk for over four years. Perhaps, if the plaintiff had worked for a much briefer period of time as a storeroom clerk, he might have presented a different situation. However, this is not case. The Court does not find that the defendant's determination was arbitrary or capricious. Accordingly, the Court finds that the plaintiff's regular occupation was correctly determined to be storeroom clerk.

## B. DENIAL OF BENEFITS

As stated previously, the arbitrary and capricious standard is highly deferential and requires that the administrator's decision be upheld as long as it is rational in light of the plan's provision, as well as reasonable with no abuse of discretion. Firestone, 489 U.S. at 115; Yeager, 88 F.3d at 380; Tavares v. Unum Corp., 17 F. Supp.2d 69, 75 (D.R.I. 1998). "Before concluding that

14

a decision was arbitrary and capricious, a court must be confident that the decision maker overlooked something important or seriously erred in appreciating the significance of evidence." Wahlin v. Sears, Roebuck & Co., 78 F.3d 1232, 1235 (7th Cir. 1996) (quoting Patterson v. Caterpillar Inc., 70 F.3d 503, 505 (7th Cir. 1995)). However, the administrator is "not obliged to accord special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825, 123 S.Ct. 1965, 1967, 155 L.Ed.2d 1034, 1039 (2003).

The defendant contends that the plaintiff fails to meet the definition of disability under the plan. Specifically, the defendant contends that the plaintiff is able to perform the material and substantial duties of his regular occupation. The plaintiff contends that the medical records in which he submitted demonstrate that he is unable to perform sedentary work. Specifically, he relies on Dr. Ball's opinion that the plaintiff would not be able to return work.

The plaintiff asserts that Dr. Ball clearly opined in the "Physician's Statement" that the plaintiff had reached maximum recovery and would not be able to return to work. (AR 029). He contends that Dr. Ball did not say that the plaintiff could not return to any work *other than sedentary work*. He argues that Dr. Ball simply states that the plaintiff "will not be able to return to work." The plaintiff further asserts that Dr. Ball's records

15

from September 5, 2002, and October 3, 2002, also indicate total disability where he opines that the plaintiff is unable to return to work. The defendant, however, argues that the information and documentation from Dr. Ball does not support his opinion that the plaintiff is unable to return to work as a storeroom clerk. The Court agrees.

There is nothing in the record to show that the plaintiff had difficulty in performing the duties of a storeroom clerk as he had been doing from April 1998 to August 31, 2002. The plaintiff himself described his job as not involving walking or using steps, was sedentary only and that it involved him answering the telephone and signing for parts. (AR 100). In fact the record reflects that the reason the plaintiff stopped performing as a storeroom clerk was because his job was eliminated due to employment decisions to downsize and not because of his physical impairments. Although Dr. Ball states that the plaintiff is unable to return to work, his conclusion appears to be in contemplation of him returning as a maintenance mechanic. In his September assessment, which took place after the plaintiff's sedentary job as storeroom clerk was eliminated, Dr. Ball stated that the plaintiff was severely restricted from work activity and that he could "only perform absolute sitting sedentary activities." (AR 090). He then goes on to state that the plaintiff is unable to return to work. The only logical reading of an otherwise contradictory conclusion is that

the plaintiff was unable to return to work since the position of storeroom clerk was no longer available. Further, Dr. Ball's restricting the plaintiff from ambulatory activity does not prevent the plaintiff from performing the job of storeroom clerk as described on his "physical demand analysis." (AR 061-62).

Therefore, the Court finds that, under the highly deferential arbitrary and capricious standard of review, the administrator's conclusion that the plaintiff failed to present sufficient evidence to support his claim for long term disability benefits is reasonable.

IV.

Accordingly, the Court finds that the administrator's decision to deny benefits in this case was supported by sufficient medical evidence and was neither arbitrary nor capricious in light of the applicable policy standards. Judgment shall be entered in favor of the defendant, Continental Casualty Company.

An appropriate order shall be entered.

*Thomas A. Higgins*
Thomas A. Higgins
United States District Judge
8-26-05

Case 1:03-cv-00110   Document 15   Filed 08/26/05   Page 17 of 17 PageID #: 34